104 F.3d 351
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Renan Edgar RUIZ, Noel Ruiz Torres, a/k/a "Nolo", Renan
Ruiz, Defendants-Appellants.
 Nos. 95-1677(L), 96-1046, 96-1161.
 United States Court of Appeals, Second Circuit.
 Oct. 24, 1996.
 
 1
 John M. Burke, Brooklyn, NY.
 
 
 2
 Colleen P. Cassidy, The Legal Aid Society, New York, NY.
 
 
 3
 Ira D. London, New York, NY.
 
 
 4
 Nancy L. Kestenbaum, Asst. U.S. Atty., New York, NY.
 
 
 5
 Present: NEWMAN, Chief Judge, LEVAL, Circuit Judge, OBERDORFER,* District Judge.
 
 
 6
 Defendants Renan Edgar Ruiz, Jr. ("Ruiz Jr."), Noel Ruiz Torres ("Torres"), and Renan Ruiz ("Ruiz Sr.") appeal from judgments of conviction and sentence entered, respectively, on November 24, 1995 (Ruiz Jr.), January 23, 1996 (Torres), and March 11, 1996 (Ruiz Sr.). The indictment had charged the defendants with committing various offenses arising from a conspiracy to sell cocaine to a Government informant in March and April of 1994.
 
 
 7
 Ruiz Jr. was tried before a separate jury and convicted on Count One (conspiracy to distribute and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 846), Count Two (possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) & 841(b)(1)(B) and 18 U.S.C. § 2), and Count Three (using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)). He was found guilty and sentenced to 180 months' imprisonment. Torres and Ruiz Sr. were tried together. Ruiz Sr. was convicted on Counts One and Two and sentenced to 121 months' imprisonment. Torres was convicted on Count One and sentenced to 151 months' imprisonment.
 
 
 8
 1. Claims of Ruiz Jr.
 
 
 9
 (a) First, he claims that the District Court erred when it received the jury's verdict and polled the jury in his absence. Ruiz Jr. had been hospitalized after summations were concluded. The jury did not know of his absence from the courtroom until after it had reached a verdict. When the jurors returned to the courtroom, the trial judge advised them that the defendant was absent because he was ill. The Government concedes that receiving the verdict and polling the jury without Ruiz Jr.'s presence was erroneous under Illinois v. Allen, 397 U.S. 337, 338 (1970) and Fed.R.Crim.P. 43. A jury should not be polled in the absence of the defendant. We conclude, however, that "no harm could result from allowing the jury, which was unaware of [Ruiz Jr.'s] absence, to continue its deliberations." United States v. Mackey, 915 F.2d 69, 75 (2d Cir.1990). Moreover, although Ruiz Jr. places particular emphasis on the fact that the jurors were polled in his absence and contends that one or more of them might have voted to acquit had they been forced to convict him face-to-face, in the circumstances of this case, such bare speculation is insufficient to create a reasonable doubt that would warrant relief. "It cannot be plausibly contended that his absence [during the polling of the jurors] would have altered the outcome of the verdict." Id. Therefore, the error was harmless.
 
 
 10
 Furthermore, Ruiz Jr.'s attorney consented to taking the verdict in his absence. It appears the attorney had communicated with the defendant about the need to be absent. Although he was not asked and did not state that Ruiz Jr. had personally consented, the circumstances suggest that he did and the defendant has never alleged the contrary. The issue was not raised in the district court after the taking of the verdict or at the time of sentencing. Courts of Appeals do not ordinarily consider questions not raised in the district court. Singleton v. Wulff, 428 U.S 106, 120, 96 S.Ct. 2868, 2877 (1976); Hutton Const. Co. v. County of Rockland, 52 F.3d 1191, 1193 (2d Cir.1995).
 
 
 11
 (b) Second, Ruiz Jr. challenges the sufficiency of the evidence to support the section 924(c) conviction. In the aftermath of the Supreme Court's decision in Bailey v. United States, 116 S.Ct. 501 (1995), this Circuit has held that the sufficiency of the evidence under the "carry" prong of section 924(c) may be relied upon to sustain a defendant's conviction under this statute, notwithstanding the insufficiency of the evidence to support a conviction under the "use" prong as narrowed by Bailey. See United States v. Vasquez, 85 F.3d 59, 61 (2d Cir.1996). Though the evidence that a gun was secretly carried by Ruiz Jr. on his person during the conspiracy was insufficient to convict him under the "use" prong, this evidence is sufficient to support a conviction under the "carry" prong. See United States v. Giraldo, 80 F.3d 667, 677 (2d Cir.1996).
 
 
 12
 (c) Third, Ruiz Jr. contends that the District Court's admittedly erroneous jury charge concerning the "use" prong of section 924(c) requires reversal. But we have recently held that a Bailey error in a jury instruction is harmless if it is clear, "based on consideration of the entire jury charge and the evidence, that the jury's finding of a section 924(c) violation was the 'functional equivalent' ... of a finding that the firearm had been unlawfully carried." Vasquez, 85 F.3d at 61 (quoting Sullivan v. Louisiana, 508 U.S. 275, 279-81, 113 S.Ct. 2078, 2082 (1993)).
 
 
 13
 In this case, since the only evidence connecting Ruiz Jr. with the gun was that he carried it in his waistband while delivering the drugs, the jury's finding of guilt under section 924(c) was undoubtedly based on the "carry" theory and did not involve the "use" prong upon which the jury was incorrectly instructed. Under the circumstances, there is no risk that this jury returned its guilty verdict "on the basis of acts that did not constitute a criminal offense." United States v. Pimentel, 83 F.3d 55, 60 (2d Cir.1996). The error in the instruction was harmless.
 
 
 14
 In Giraldo, the jury instruction on the section 924(c) count was identical to the one given by the District Judge in the instant case, and we held that where "the court's description of the 'use' prong would have been correct with respect to the 'carry' prong," and where there is no question that evidence was sufficient to support a finding of "carrying," "we have no doubt that the court's erroneous instruction on 'use' was harmless." Id. at 678.
 
 
 15
 (d) Finally, Ruiz Jr. challenges venue for the section 924(c) count. However, there was sufficient evidence to support the jury's finding that Ruiz Jr. carried the gun in the Southern District. Although defendant was arrested in Brooklyn, his post-arrest admission that he had obtained the drugs in the Bronx permitted the jury to conclude that he carried the gun at the time of the pick-up as well as at the time of delivery. Furthermore, because Ruiz Jr. did not timely object to the jury instructions on venue, we can reverse the District Court's allegedly erroneous charge only for plain error. Fed.R.Crim.P. 52(b). Because this Circuit has not yet decided whether venue on a section 924(c) charge is proper only in the district where the gun was used or carried, or whether venue is proper in any district in which the underlying drug trafficking offenses are committed, an issue on which the circuits are divided, compare United States v. Pomeranz, 43 F.3d 156, 161-62 (5th Cir.1995) (venue proper wherever underlying trafficking offenses are committed), cert. denied, 116 S.Ct. 513 (1995), with United States v. Corona, 34 F.3d 876 (9th Cir.1994) (venue proper only where gun was used or carried), the error, if any, committed by the District Court was not "clear under current law," United States v. Olano, 507 U.S. 725, 734 (1993), and, therefore, not plain error.
 
 2. Claims of Ruiz Sr. and Torres
 
 16
 (a) Ruiz Sr. and Torres first claim that because Ruiz Jr.'s post-arrest statement regarding the location where he obtained the cocaine should not have been admitted, venue in the Southern District was improper on both Counts One and Two. During the trial of Ruiz Sr. and Torres, the District Court admitted Ruiz Jr.'s post-arrest statement, made in response to a Government agent's inquiry, that he obtained the cocaine at "University Avenue and Tremont in the Bronx," as a declaration against penal interest under Fed.R.Evid. 804(b)(3). Appellants argue that under Williamson v. United States, 114 S.Ct. 2431 (1994), this statement did not qualify, under Fed.R.Evid. 804(b)(3) as an exception to the hearsay rule because it was not self-inculpatory. They contend that because this statement was intended to serve either (a) to minimize Ruiz Jr.'s role in the conspiracy as a mere courier, or (b) to deflect guilt from the true supplier of the cocaine, it is not the kind of statement that, post-Williamson, is admissible under Rule 804(b)(3). We agree with the Government, however, that by making this statement, Ruiz Jr. admitted that he had knowledge of the contents of the cocaine-filled bag and, therefore, that he knowingly possessed cocaine and willingly participated in a drug trafficking conspiracy. When he made the post-arrest statement, Ruiz Jr. "essentially forfeited his only possible defense to a charge of cocaine possession, lack of knowledge." Id. at 2437. It is therefore sufficiently self-inculpatory to be admissible under Rule 804(b)(3).
 
 
 17
 (b) Next, Ruiz Sr. and Torres contend that the District Court erred in admitting evidence of the gun carried by Ruiz Jr. in their trial because its probative value was outweighed by its prej-udicial effects. However, we have repeatedly upheld the admission of a co-conspirator's firearm based on its probative value with respect to the nature of the charged drug conspiracy. See, e.g., United States v. Fernandez, 829 F.2d 363, 367 (2d Cir.1987).
 
 
 18
 (c) Third, appellants contend that the District Court erred in imposing a two-level enhancement to their sentences based on Ruiz Jr.'s possession of a firearm. Under U.S.S.G. § 2D1.1(b)(1), a two-level enhancement to a defendant's base offense level is required if a firearm was "possessed" during the commission of the underlying offense. Under the relevant conduct principles of U.S.S.G. § 1B1.3(a)(1), a defendant is held accountable for "all reasonably foreseeable acts ... of other [conspirators] in furtherance of the" conspiracy. This Court will not reverse the District Court's finding that an enhancement was appropriate under section 2D1.1 unless it was clearly erroneous. United States v. Stevens, 985 F.2d 1175, 1188 (2d Cir.1993).
 
 
 19
 In view of the large quantity of cocaine involved and the large sum of money to be exchanged, and the fact that the defendants were close relatives dealing with a first-time customer, the District Court's determination that Ruiz Jr.'s possession of the gun was in furtherance of the conspiracy and reasonably foreseeable to both Ruiz Sr. and Torres was not clearly erroneous. See United States v. Soto, 959 F.2d 1181, 1187 (2d Cir.1992).
 
 
 20
 (d) Finally, we reject appellants' contention that their retrial, following a mistrial declared upon the motion of counsel for both Ruiz Sr. and Torres, was barred by the Double Jeopardy Clause. During the first trial, the Government attorney induced a statement from a witness on direct examination that was violative of Bruton v. nited States, 391 U.S. 123 (1968). Appellants' attorneys then successfully moved for a mistrial.
 
 
 21
 Because there was no evidence that the Government attorney's admitted mistake was either deliberately made or intended to provoke defendants to move for a mistrial, and because the Government had no reason to fear an acquittal where overwhelming evidence of defendants' guilt existed, retrial after the declaration of the mistrial was not barred. See United States v. Pavloyianis, 996 F.2d 1467, 1474 (2d Cir.1993) (defendant must show that prosecutorial misconduct was "perpetrated with the specific objective of avoiding an acquittal that the prosecution viewed as likely"). We also reject the contention that the District Court was required to hold an evidentiary hearing to determine the prosecutor's intent. Id. at 1475 ("No rule of law requires a hearing ... where the relevant facts can be ascertained from the record.").
 
 
 
 *
 Of the United States District Court for the District of Columbia, sitting by designation